UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JOSEPH FUENTES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:18-cv-00096-WTL-DLP |
| | ) | |
| RICHARD BROWN, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORUPUS**

Petitioner Joseph Fuentes was convicted of attempted murder, criminal recklessness, resisting law enforcement, and possession of a firearm by a felon in an Indiana state court. Mr. Fuentes, by counsel, now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He maintains that his trial counsel provided ineffective assistance by failing to impeach a critical state witness with a prior inconsistent statement. The Indiana Court of Appeals rejected this claim, reasoning that trial counsel made a reasonable strategic decision to not impeach the witness. Because this was a reasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984), Mr. Fuentes is not entitled to habeas relief. Accordingly, Mr. Fuentes's petition for a writ of habeas corpus is **denied** and a certificate of appealability will not issue.

**I.
Background**

Federal habeas review requires the Court to "presume that the state court's factual determinations are correct unless the petitioner rebuts the presumption by clear and convincing evidence." *Perez-Gonzalez v. Lashbrook*, 904 F.3d 557, 562 (7th Cir. 2018); *see* 28 U.S.C. § 2254(e)(1). On direct appeal, the Indiana Court of Appeals summarized the relevant facts and procedural history as follows:

> On October 2, 2012, South Bend Police Officers John Comeau ("Officer Comeau") and Tim Cichowicz ("Officer Cichowicz") were dispatched to a house on Ford Street in South Bend, Indiana on a report of a possibly armed male. When the officers arrived at the scene, Fuentes was standing by his tan Cadillac. Another man, later identified as Jaime Duron ("Duron") was standing in the yard of the house. Officer Comeau told Duron to approach him and ordered Fuentes not to move. Duron obeyed the officer's commands, but Fuentes jumped into his car and drove away. Officer Cichowicz pursued Fuentes in his patrol car with the siren and flashing lights activated. Fuentes ignored Officer Cichowicz's car and continued to flee, running through a stop sign. Soon thereafter, Fuentes lost control of his car and crashed into a nearby yard. Undaunted, Fuentes exited his car and fled on foot.
>
> Officer Cichowicz got out of his patrol car and gave chase on foot. With Officer Cichowicz closing in on him, Fuentes slowed down, turned around, and pointed a firearm at Officer Cichowicz at head level. Officer Cichowicz dove for cover and heard Fuentes fire the weapon. Fuentes then continued to flee down an alleyway. Officer Cichowicz continued to pursue Fuentes, took cover behind a garage, and peered around the corner. Fuentes, who was approximately twenty-five yards away, fired his weapon two more times as Officer Cichowicz took cover.
>
> Fuentes then took refuge in an abandoned home. After the police SWAT team surrounded the house and kicked in the door, Fuentes surrendered himself. When he was taken into custody, Fuentes did not have a firearm on his person. However, during a search of Fuentes's car, the police found an AR–15 rifle in the trunk. Fuentes asked the police officer who transported him to jail, "if [the police] had found an A.R. rifle in the trunk of the car that [Fuentes] was driving." Tr. p. 306.
>
> As a result of this incident, the State charged Fuentes on October 4, 2012, with Class A felony attempted murder, Class C felony possession of a firearm by a felon, Class D felony criminal recklessness, Class D felony resisting law enforcement, Class D felony intimidation, and Class A misdemeanor carrying a handgun without a license. The State later dismissed the intimidation charge. A bifurcated jury trial commenced on September 3, 2013, with regard to all charges except possession of a firearm by a felon. The jury found Fuentes guilty the following day, and Fuentes then pleaded guilty to being a felon in possession of a firearm. At the October 2, 2013 sentencing hearing, the trial court "merged" the misdemeanor conviction for carrying a handgun without a license into the conviction for possession of a firearm by a felon and imposed an aggregate executed term of forty years.

*Fuentes v. State*, 10 N.E.3d 68, 71-72 (Ind. Ct. App. 2014) (footnote omitted) ("*Fuentes I*"). The Indiana Court of Appeals in *Fuentes I* affirmed Mr. Fuentes's convictions.

Mr. Fuentes pursued post-conviction relief in state court, arguing that his trial counsel provided ineffective assistance. The state post-conviction court denied relief, and the Indiana

Court of Appeals affirmed. *See Fuentes v. State*, 91 N.E.3d 1106, 2017 WL 4322384 (Ind. Ct. App. 2017) ("*Fuentes II*").

Mr. Fuentes filed the instant petition for a writ of habeas corpus by counsel on March 2, 2018. His only claim is that the Indiana Court of Appeals in *Fuentes II* improperly rejected his ineffective-assistance-of-trial-counsel claim.

## II.
## Applicable Law

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") directs how the Court must consider petitions for habeas relief under § 2254. "In considering habeas corpus petitions challenging state court convictions, [the Court's] review is governed (and greatly limited) by AEDPA." *Dassey v. Dittmann*, 877 F.3d 297, 301 (7th Cir. 2017) (en banc) (citation and quotation marks omitted). "The standards in 28 U.S.C. § 2254(d) were designed to prevent federal habeas retrials and to ensure that state-court convictions are given effect to the extent possible under law." *Id.* (citation and quotation marks omitted).

A federal habeas court cannot grant relief unless the state court's adjudication of a federal claim on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"The decision federal courts look to is the last reasoned state-court decision to decide the merits of the case, even if the state's supreme court then denied discretionary review." *Dassey*, 877 F.3d at 302. "Deciding whether a state court's decision 'involved' an unreasonable application of federal law or 'was based on' an unreasonable determination of fact requires the federal habeas court to train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims, and to give appropriate deference to that decision[.]" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018) (citation and quotation marks omitted). "This is a straightforward inquiry when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion." *Id.* "In that case, a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.*

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. "The issue is not whether federal judges agree with the state court decision or even whether the state court decision was correct. The issue is whether the decision was unreasonably wrong under an objective standard." *Dassey*, 877 F.3d at 302. "Put another way, [the Court] ask[s] whether the state court decision 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Richter*, 562 U.S. at 103). "The bounds of a reasonable application depend on the nature of the relevant rule. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case

determinations." *Schmidt v. Foster*, 911 F.3d 469, 477 (7th Cir. 2018) (en banc) (citation and quotation marks omitted).

### III.
### Discussion

A criminal defendant has a right under the Sixth Amendment to effective assistance of counsel. *See Strickland*, 466 U.S. at 687. For a petitioner to establish that "counsel's assistance was so defective as to require reversal," he must make two showings: (1) that counsel rendered deficient performance that (2) prejudiced the petitioner. *Id.* "This inquiry into a lawyer's performance and its effects turns on the facts of the particular case, which must be viewed as of the time of counsel's conduct." *Laux v. Zatecky*, 890 F.3d 666, 673-74 (7th Cir. 2018) (citation and quotation marks omitted). "As for the performance prong, because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight, *Strickland* directs courts to adopt a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 674 (citation and quotation marks omitted). "The prejudice prong requires the defendant or petitioner to 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

Mr. Fuentes maintains that his trial counsel's performance was deficient because he failed to impeach Officer Cichowicz with a prior inconsistent statement regarding where Mr. Fuentes pointed his gun during the second round of shots. Because there was no physical evidence supporting the attempted murder charge—such as bullet holes suggesting that Mr. Fuentes fired at Officer Cichowicz—Mr. Fuentes argues that the attempted murder charge turned almost entirely on the creditability of Officer Cichowicz's testimony that Mr. Fuentes aimed the gun at him before

shooting.[1] Given this, Mr. Fuentes maintains that it was deficient performance for trial counsel not to undermine Officer Cichowicz's credibility with his prior inconsistent recounting of the events.

Officer Cichowicz made three statements regarding the incident—during a videotaped interview the day of the incident, during a pre-trial deposition, and during trial. During the videotaped interview, Officer Cichowicz stated that Mr. Fuentes pointed the gun at him during both the first shot and the second round of shots. PCR Ex. 1. But during both his deposition and trial testimony, Officer Cichowicz testified that Mr. Fuentes pointed the gun at him during the first shot but pointed his gun in the air during the second round of shots. Trial Tr. 220-21, 230-36. Officer Cichowicz's second version of events was consistent with the testimony of Thomas Soule, a neighborhood resident who witnessed part of the chase. Mr. Soule testified that he heard a gunshot, then looked out and saw Mr. Fuentes fire a second round of shots, one "behind his head" and the others "up in the air." *Id.* at 167-68.

During the post-conviction proceedings, Mr. Fuentes's trial counsel testified regarding his overall strategy for defending against the attempted murder charge, as well as why he did not impeach Officer Cichowicz with his prior inconsistent statement made during the interview. Regarding his overall strategy, trial counsel testified that because specific intent to kill was required to prove an attempted murder charge, his defense would be that Mr. Fuentes was fleeing rather than attempting to kill anyone. Dkt. 8-5 at 10. Mr. Fuentes discharged his gun, trial counsel argued, not to try to kill anyone but to "scare police away, so he could get away." *Id.*

---

[1] Although Officer Cichowicz's testimony was likely the most important evidence supporting the attempted murder charge, the State also presented Mr. Fuentes's statements after the shooting to prove the requisite specific intent. For example, at the jail Mr. Fuentes stated that he would have shot an ATF agent "too," Trial Ex. 25, which strongly suggests he was shooting at Officer Cichowicz.

As to trial counsel's failure to impeach Officer Cichowicz with his prior inconsistent statement, trial counsel testified as follows:

> Q. Did you find that Officer Cichowicz . . . changed his testimony to be consistent with other evidence of the investigation?
>
> A. . . . It was something I considered, but frankly [Officer Cichowicz's second version] was more consistent with our trial theory . . . . I could have crossed Office Cichowicz a little harder perhaps on that issue. I don't know what it would have gotten me, however, because typically when confronted with something like that, you know, there's always a plausible explanation for changing testimony rather than, oh, I just lied. Or I changed it to fit the right story. So I didn't.
>
> If Officer Cichowicz had given testimony at trial that was inconsistent with his deposition, I would have hammered him with it as much as humanly possible, but when his deposition testimony and trial testimony were consistent and they were frankly more consistent with our theory of the case that it wasn't an intentional shooting to kill, I went with it.

*Id.* at 16.

The Indiana Court of Appeals relied on trial counsel's foregoing testimony in concluding that his performance was not deficient. Specifically, the Indiana Court of Appeals concluded that it was reasonable for trial counsel not to impeach Officer Cichowicz with his prior inconsistent statement because "Officer Cichowicz's latter version of events was more conducive to his theory of the case and overall trial strategy." *Fuentes II*, 2017 WL 4322384, at *4.

This is not an unreasonable application of *Strickland*'s performance prong. The Supreme Court made clear in *Strickland* that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Strickland*, 466 U.S. at 690-91; *see United States v. Jansen*, 884 F.3d 649, 656 (7th Cir. 2018) ("Generally when an attorney articulates a strategic reason for a decision, the court defers to that choice." (citation and quotation marks omitted)). There is no allegation that trial counsel's investigation into the law or facts was unreasonable. Trial counsel made a strategic choice not to impeach Officer Cichowicz

with his prior inconsistent statement. Although Mr. Fuentes is correct that impeaching Officer Cichowicz may have undermined his credibility,[2] it also would have exposed the jury to his first version of events. This version—that Mr. Fuentes fired both the first shot *and* the second round of shots at Officer Cichowicz—was worse for Mr. Fuentes's defense than Officer Cichowicz's trial testimony that Mr. Fuentes only pointed the gun at him during the first shot. As explained by Respondent, if trial counsel "would have impeached Officer Cichowicz's testimony about the second round of shots with his prior inconsistent statement, he would have introduced even more evidence to support the attempted murder charge." Dkt. 6 at 11. Because of this, trial counsel was correct that Officer Cichowicz's trial testimony was "more consistent" with his defense strategy. Dkt. 8-5 at 16.

In the end, whether this Court agrees with trial counsel's strategy is irrelevant; what matters is that strategic decisions predicated on an adequate investigation are "virtually unchallengeable[.]" *Strickland*, 466 U.S. at 690-91. The Indiana Court of Appeals reasonably applied *Strickland* in concluding the same.[3] Mr. Fuentes is thus not entitled to habeas relief.

## IV.
## Certificate of Appealability

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017).

---

[2] Mr. Fuentes attempts to bolster the potential impeachment value of Officer Cichowicz's first statement by arguing that "Officer Cichowicz presumably provided this statement prior to his knowledge of Mr. Soule's statement. Upon discovering that Mr. Soule's version differed from his, Officer Cichowicz modified his statement to comport with Mr. Soule's statement." Dkt. 14 at 7. But this argument is an unsupported invitation for the Court to speculate regarding why Officer Cichowicz changed his statement. More importantly, even if this invitation was supported by any evidence, it is not supported by evidence presented during state post-conviction proceedings. This Court's review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

[3] Mr. Fuentes resists this conclusion, arguing that this case is governed by *Dixon v. Snyder*, 266 F.3d 693 (7th Cir. 2001). But the petitioner's trial counsel in *Dixon* failed to impeach the critical witness based on his ignorance of the relevant state law, *id.* at 702-03, not, as here, a strategic decision that the impeachment evidence would do more harm than good.

Instead, a state prisoner must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In deciding whether a certificate of appealability should issue, "the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck*, 137 S. Ct. at 773 (citation and quotation marks omitted).

Rule 11(a) of the Rules Governing Section 2254 Proceedings in the United States District Courts requires the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Jurists of reason would not disagree that the Indiana Court of Appeals reasonably applied *Strickland* when denying Mr. Fuentes's ineffective-assistance-of-counsel claim. Therefore, a certificate of appealability is **denied**.

## V.
## Conclusion

Mr. Fuentes's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **denied** and a certificate of appealability shall not issue.

Final Judgment in accordance with this decision shall issue.

**IT IS SO ORDERED.**

Date: 6/12/2019

Hon. William T. Lawrence, Senior Judge
United States District Court
Southern District of Indiana

Distribution:

Russell W Brown Jr.
SCOTT KING GROUP
rbrown@kbmtriallawyers.com

Jesse R. Drum
INDIANA ATTORNEY GENERAL
jesse.drum@atg.in.gov